PREDRAG DIMITRI DIMITROV THOMPSON

491 Staten Avenue, #14

Oakland, CA 94612

Telephone: (510) 325-2952

Email: dimitrifromlondon@hotmail.com

**Plaintiff, Pro Se**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREDRAG DIMITRI DIMITROV THOMPSON,<br><br>Plaintiff,<br><br>vs.<br><br><br>EQUIFAX INFORMATION SERVICES LLC<br><br>Defendant, | Case No. 4:26-cv-00834-KAW<br><br><br>**PLAINTIFF'S NOTICE OF OUTSTANDING DISCOVERY IN ADVANCE OF FURTHER CASE MANAGEMENT CONFERENCE** |

PLAINTIFF'S NOTICE OF OUTSTANDING DISCOVERY DISPUTES IN ADVANCE OF FURTHER CASE MANAGEMENT CONFERENCE

Case No.: 4:26-cv-00834-KAW
Judge: Hon. Kandis A. Westmore
CMC: June 2, 2026 at 1:30 PM via Zoom

## PLAINTIFF'S NOTICE OF OUTSTANDING DISCOVERY DISPUTES

## IN ADVANCE OF FURTHER CASE MANAGEMENT CONFERENCE

## I. INTRODUCTION

Plaintiff Predrag Dimitri Dimitrov Thompson, appearing pro se, respectfully submits this Notice

to inform the Court of outstanding discovery disputes that Plaintiff intends to raise at the Further

Case Management Conference on June 2, 2026. Plaintiff has propounded four complete sets of

discovery to Defendant Equifax Information Services LLC. Equifax has responded to Sets 1, 2,

and 3. Set 4 was served May 24, 2026 and is not yet due. Across every response in Sets 1, 2, and

3 — every interrogatory, every request for production, and every request for admission —

Equifax has not provided one substantive answer. Not one.

## II. THE FACTUAL RECORD — WHAT EQUIFAX REPORTED AND WHEN

The following facts are documented in Equifax's own produced records and are not in dispute:

**Dismissed Bankruptcy Petitions — February through June 2025 — Foundation**

**Facts:Plaintiff filed four Chapter 7 bankruptcy petitions between February and June 2025:**

**Case Nos. 2540375, 2540511, 2540725, and 2540998. All four were dismissed within weeks**

**before reaching any substantive stage. No creditor list, schedules, or account information**

**was ever submitted. No accounts were ever attached to any petition. On July 10, 2025, the**

Bankruptcy Court issued a written order expressly finding that all four cases never proceeded to any substantive stage before dismissal. LexisNexis Risk Solutions Inc. — which has admitted in a filed federal court document that it is itself a consumer reporting agency under 15 U.S.C. §1681a(f) (Joint CMC Statement, Case No. 26-cv-00394-JD, filed by LexisNexis counsel Alvaro Montenegro of Alston & Bird LLP) — confirmed on December 9, 2025 that it located and removed all four bankruptcy case numbers from Plaintiff's file and notified all three bureaus including Equifax on Plaintiff's behalf (Exhibit B, EIS-THOMPSON-002401).

Despite this, Equifax continued reporting three dismissed bankruptcy public records through the present. As of May 27, 2026 — during active litigation with counsel appearing — all three entries remain live on Plaintiff's myEquifax portal.

ACCOUNT ONE: AES/ELFI STUDENT LOANDeletion September 2025 — Reinsertion January 2026 Without Statutory Compliance:Plaintiff's AES/ELFI student loan tradeline — Plaintiff's oldest account, opened July 2006 — was deleted from Plaintiff's Equifax file in September 2025 following Plaintiff's CFPB complaint. It was reinserted in January 2026 without written certification of accuracy from the furnisher and without written notice to Plaintiff within five business days, as required by 15 U.S.C. §1681i(a)(5)(B). Defense counsel Ritika Singh confirmed in writing on May 5, 2026 that there are 'no responsive documents' for reinsertion documentation — meaning no certification was generated and no notice was ever sent. This is not a discovery gap. This is a per se statutory violation admitted by opposing counsel on the record. This reinsertion caused Plaintiff's reported credit history to collapse from 19 years, 9 months to approximately 9 years, directly producing the 'length of time accounts have been

established' adverse factor on the December 2, 2025 Patelco credit pull.Dual Loan Suppression — 2003 Loan Deleted, 2006 Loan Retained (EIS-THOMPSON-000165): Equifax's own internal derogatory trade history at Bates number EIS-THOMPSON-000165 shows two separate student loan entries: one associated with a 2003 origination date and one with a 2006 origination date, both identified as Utah Higher Education / AES accounts. The 2003 entry shows 'CREDIT GRANTOR DELETE CDV' as the action taken — the credit grantor directed Equifax to delete that tradeline. The 2006 entry was retained. When AES transferred servicing, only one combined tradeline was reported using the 2006 origination date — suppressing the 2003 loan's separate existence. AES's own billing statement dated May 19, 2026 (Account No. 01 5961 9980) shows two separate loan sequences — Loan 1002 (SUBCNS, original balance $2,531.56, current balance $4,708.46) and Loan 1001 (UNCNS, original balance $3,949.77, current balance $10,039.33) — both currently owned by ELFI, combined outstanding balance approximately $14,747. AES is collecting on two loans. Equifax has been reporting one. The internal Bates record at EIS-THOMPSON-000165 establishes that Equifax has known since at least the date of that internal record that two separate student loan accounts existed in its system. One was selectively deleted at the credit grantor's direction. The other was retained and later reinserted without §1681i(a)(5)(B) compliance. This selective suppression and unauthorized reinsertion constitutes independent violations of 15 U.S.C. §1681e(b), §1681i(a)(5)(B), and §1681g.

ACCOUNT TWO: ONEMAIN FINANCIAL False Chapter 7 Notation — Charged Off 2023, Bankruptcy Codes Through April 2026:Equifax added false 'Included in Bankruptcy' notation to Plaintiff's OneMain Financial tradeline after July 2025. OneMain

charged off on 01/31/2023 with a Charge Off Amount of $7,005. The account has been closed since 2023. Despite this, Equifax's produced credit file dated April 24, 2026 (Confirmation No. 6114504437, Bates page 8 of 24, Exhibit I-1) shows the account reported as Date Reported: 04/06/2026, Balance: $7,005, with Narrative Codes 067 (Charged Off Account), 220 (Bankruptcy Chapter 7), 238 (Unsecured), and 279 (Bankruptcy Petition) appearing across monthly entries in the 24-month history. Narrative Code 220 — Bankruptcy Chapter 7 — and Code 279 — Bankruptcy Petition — appear repeatedly across multiple months from April 2025 through early 2026 in Equifax's own produced file.24 Consecutive Months of Post-Charge-Off Derogatory Accumulation: The payment history grid in the April 24, 2026 produced file shows the Charge Off designation — CO — recorded every single month from 2024 through March 2026 without interruption. The 24-month history table confirms $7,005 balance reported unchanged every month, with Last Payment Date fixed at 06/30/2023. A charged-off account has a fixed status. It cannot legally continue accumulating new monthly derogatory notations after charge-off — the account is closed, the debt is written off, and there is no ongoing payment obligation. Each new monthly CO notation and each new monthly bankruptcy code after the January 2023 charge-off is a separate inaccuracy under 15 U.S.C. §1681e(b). Plaintiff disputed this account in writing across multiple dispute letters and all three discovery sets. Equifax continued adding monthly derogatory marks despite those documented disputes. Twenty-four consecutive months of inaccurate reporting on a closed account, continued after repeated written disputes, is not negligence. It is willful noncompliance under 15 U.S.C. §1681n.

Securitized Trust — Furnisher Identity Misrepresented:Equifax reports this account with OneMain as the furnisher with no notation that the debt has been assigned to a securitized trust. However, the California Superior Court complaint filed by Nelson & Kennard (Case No. 24CV074974, Alameda County, filed May 10, 2024) identifies the plaintiff as OneMain Financial Group, LLC, as Servicer for ('ASF') Wilmington Trust, N.A., as Issuer Loan Trustee for OneMain Financial Issuance Trust 2019-A — a securitized trust. OneMain is a servicer, not an owner. The trust is the owner. Equifax's reporting of OneMain as the current furnisher without disclosing the assignment to a securitized trust misrepresents the ownership structure of this debt, which is an independent §1681e(b) accuracy violation. This account is currently in arbitration proceedings following Plaintiff's motion to compel arbitration in the California Superior Court action.

ACCOUNT THREE: LENDMARK FINANCIAL SERVICES / JEFFERSON CAPITALOne Account — Two Tradelines — Dual Reporting Within the Two-Year Primary Window:Lendmark Financial Services' own CFPB complaint response confirmed the account was charged off July 26, 2023 and sold to Jefferson Capital. Lendmark's Compliance Department confirmed the same in writing on December 15, 2025 (Exhibit J): the account was charged off July 26, 2023, subsequently sold to Jefferson Capital, and Lendmark is no longer collecting. Despite this, Equifax's produced records show two separate Lendmark tradelines reporting simultaneously — one showing the account as Lendmark's closed loan, and one showing Jefferson Capital as involved — within the two-year primary discovery window. Only one entity can own a debt at any given time. Both tradelines reporting simultaneously is a §1681e(b) maximum accuracy violation. Lendmark's own December 15, 2025 compliance letter and CFPB answer — both

confirming the sale and disclaiming any collection authority — were available to Equifax. Equifax failed to resolve the dual reporting despite receiving written confirmation of the account's ownership from the original creditor itself.False Bankruptcy Notation — Equifax's Own Alert Confirms It:Equifax added a false 'Included in Bankruptcy' notation to Plaintiff's Lendmark tradeline after July 2025. Equifax's own automated myEquifax alert dated November 23, 2025 confirms the account carried 'Included in Bankruptcy' as its prior status on that date — months after all four petitions were dismissed. The ACDV at Bates number EIS-THOMPSON-001789 shows Account Status field: '[Z] ACCOUNT INCLUDED IN BANKRUPTCY - CHAPTER 7,' with Grantor Name: Lendmark Financial Services, Responder: Lendmark Financial Services, Response Code: Verified As Reported, Date of Account Information: 07/18/2025. Lendmark certified to Equifax in July 2025 that the bankruptcy notation was accurate — on an account Lendmark was simultaneously selling to Jefferson Capital.Jefferson Capital Listed as Original Creditor — Internal Contradiction:Equifax's January 10, 2026 credit file (Exhibit D) lists Jefferson Capital as the Original Creditor for the Lendmark account. The ACDV at EIS-THOMPSON-002407 shows Original Creditor Name: JEFFERSON CAPITAL and Purchased Portfolio Sold To Name: JEFFERSON CAPITAL simultaneously — Jefferson Capital appearing in both fields at once. Jefferson Capital cannot be both the original creditor and the party the debt was sold to. Lendmark is the original creditor. Jefferson Capital is the debt buyer. This internal contradiction in Equifax's own system is documented at a specific Bates number and is a §1681e(b) maximum accuracy violation on its face.Verified Through a Furnisher With No Authority to Verify (EIS-THOMPSON-002424):Equifax's reinvestigation result at EIS-THOMPSON-002424

states regarding Lendmark account 2803: 'WE VERIFIED THAT THIS ITEM BELONGS TO YOU. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: ADDITIONAL INFORMATION, HIGH CREDIT, DATE OF MAJOR DELINQUENCY 1ST REPORTED, HISTORICAL ACCOUNT INFORMATION. If you have any questions about this item please contact: LENDMARK FINANCIAL SERVICES, LLC, 2118 Usher Street, Covington, GA 30014, Phone: (866) 413-8340.' Equifax verified through Lendmark — a party that has twice in writing disclaimed ownership of this account and directed all inquiries to Jefferson Capital. Verification through a furnisher with no authority to verify is the functional equivalent of no reinvestigation at all under 15 U.S.C. §1681i(a).

**ACCOUNT FOUR: CAPITAL ONE False Chapter 7 Notation — Front End and Back End — Six Months Continuous:** Equifax added a false 'Included in Bankruptcy' notation to Plaintiff's Capital One tradeline after July 2025. Equifax's produced credit files dated January 4, 2026 and April 24, 2026 (Exhibits G-1, I-2) confirm Capital One has carried Narrative Code 220 (Bankruptcy Chapter 7) and Narrative Code 279 (Bankruptcy Petition) continuously for at least the past six months on both the consumer-facing front end and Equifax's internal back end simultaneously. No bankruptcy adjudication ever occurred. No account was ever attached to any petition. **Code 280 — Bankruptcy Discharged — The Most Serious False Code:** The ACDVs at Bates numbers EIS-THOMPSON-001747 (Response Date 05/19/2025) and EIS-THOMPSON-001918 (Response Date 08/26/2025) both show Narrative Code 280 — BANKRUPTCY DISCHARGED — attached to the Capital One account, alongside Code 220 (Bankruptcy Chapter 7), Code 065 (Account Closed by Credit Grantor), and Code 279 (Bankruptcy Petition). No discharge ever occurred. The Bankruptcy Court's July 10, 2025 written order

expressly states that none of the four cases reached any substantive stage before dismissal. A dismissed petition is the legal opposite of a discharge. Reporting a dismissed petition as discharged — Code 280 — is not a gray-area inaccuracy. It is a false statement of a court-granted legal status that a federal court never granted. Capital One's own Credit Bureau Dispute Department certified these codes to Equifax as accurate in both May and August 2025. The codes remained on the account through at least April 2026. This account is not in Plaintiff's original pleading. Plaintiff filed Administrative Motion (Dkt. 26) to include Capital One and OneMain precisely because these false notations appeared within the last six months.Systematic Pattern Across Three Accounts:Capital One, OneMain Financial, and Lendmark Financial Services all simultaneously carry false Bankruptcy Chapter 7 coding on both the front-end consumer report and Equifax's internal back-end ACDV system. This is not three isolated errors. This is a systematic pattern of false bankruptcy-associated coding across every account tied to the dismissed petitions — establishing the pattern-and-practice evidence required for willfulness under §1681n. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

## THE FOUR-TO-THREE DISCREPANCY AND CLOSED PO BOX VERIFICATION

LexisNexis — a CRA That Has Admitted Its Own CRA Status — Removed All Four Cases. Equifax Kept Three.LexisNexis Risk Solutions Inc. confirmed in writing on December 9, 2025 that it located and removed all four bankruptcy case numbers from Plaintiff's file and notified all three bureaus including Equifax (Exhibit B). Equifax was reporting four public records. After receiving LexisNexis's removal notification, Equifax's count dropped to

three — but never reached zero. Three is not four. Zero is what LexisNexis told Equifax. Three is what Equifax continued to report. Equifax had no valid source to support any of the three remaining entries.Critically: LexisNexis is not a vendor. LexisNexis Risk Solutions Inc. admitted in the Joint Case Management Statement filed in Case No. 26-cv-00394-JD: 'It is not disputed that LexisNexis Risk is a consumer reporting agency under 15 U.S.C. §1681a(f).' The communication between Equifax and LexisNexis is therefore CRA-to-CRA communication, not vendor-client communication, carrying independent FCRA obligations on both parties. Equifax's CFPB response describes verifying public records through 'a business vendor' — but the entity Equifax describes as its vendor has admitted in federal court that it is a CRA. Equifax cannot hide behind the vendor label to escape its own reinvestigation obligations when the source of its data is itself a CRA with admitted FCRA duties.Verification Through a Confirmed-Closed PO Box:The LexisNexis Consumer Center PO Box 105108, Atlanta GA 30348-5108 — the only contact address printed on Equifax's own portal and in its correspondence for public record disputes — was confirmed closed by USPS. Ms. LaSharia Chambers of USPS Atlanta confirmed closure on December 11 and December 13, 2025. Priority Mail Express returned December 11, 2025 marked BOX CLOSED. The PO Box remained closed through the entire period of Equifax's December 29, 2025 verification. Equifax's own December 29, 2025 credit file letter states three bankruptcy petitions belong to Plaintiff and identifies LexisNexis as the source. LexisNexis had removed all four twenty days earlier. Equifax either sent verification requests to a confirmed-closed address and received no valid response, or conducted no verification at all. Either scenario fails the reasonable reinvestigation standard of 15 U.S.C. §1681i(a) and constitutes willful noncompliance

under §1681n. See Chaitoff v. Experian Info. Solutions, 79 F.4th 800, 815 (7th Cir. 2023); Berry v. Experian (6th Cir.) (repeating the same ineffective steps was not a reasonable response).Shared Subscriber Code 16V — Same Code on All Three Entries (EIS-THOMPSON-002342): Equifax's ACDV at EIS-THOMPSON-002342 shows Subscriber Code 161VF00124 attached to bankruptcy case 2540735, with Grantor Name: ChoicePoint Inc. and Responder: LexisNexis. This same subscriber code — 16V — appears identically on all three remaining bankruptcy entries rather than tracking each of the four separate dismissed petitions individually by case number. When an automated underwriting system reads these codes, it cannot distinguish a dismissed petition with no debts attached from a full Chapter 7 discharge. The shared code signals the same credit risk as an active or discharged bankruptcy. This backend coding practice is independently inaccurate under §1681e(b). See *Cortez v. Trans Union*, 617 F.3d 688, 709-10 (3d Cir. 2010).

Materially Misleading Portal Definition Displayed to Lenders:

Above the three bankruptcy entries, Equifax's consumer-facing portal displays to every creditor who pulls Plaintiff's report:

'Bankruptcies are a legal status granted by a federal court that indicates you are unable to pay off outstanding debt' (Exhibits F, H).

No federal court ever granted that legal status regarding Plaintiff's debts. This definition was displayed to Patelco on December 2, 2025. Patelco cited bankruptcy as a denial reason on December 22, 2025. Under *Dalton v. Capital Associated Industries*, 257 F.3d 409, 415 (4th Cir. 2001), a report is inaccurate when 'misleading in such a way and to such an extent that it can be expected to have an adverse effect.' This is the definition of material misleadingness under *Dalton*.

WILLFULNESS — ACTUAL NOTICE IN EQUIFAX'S OWN DATABASE

(EIS-THOMPSON-002401):    Equifax's    Bates-numbered    production    at EIS-THOMPSON-002401 contains the following internal data field transmitted from LexisNexis employee:

Bonica Massey (BONICA.MASSEY@LEXISNEXISRISK.COM) and recorded in Equifax's own system, verbatim and identically, for each of the three bankruptcy case numbers 2540725, 2540511, and 2540375:

'DATA HAS BEEN REMOVED FROM LEXIS NEXIS REPORT, CONSUMER DID NOT RECEIVE BENEFITS OF BANKRUPTCY FILING.'

This field — the resellerStatement — is inside Equifax's own internal database, at a specific Bates number, in Equifax's own produced file. Equifax's system recorded, for each of the three disputed case numbers, that the data had been removed from LexisNexis and that the consumer never received bankruptcy benefits.

The same EIS-THOMPSON-002401 document also records the tradelines in dispute:

- AES/UHEAA/DEP OF EDUCATION,
- ONEMAIN FINANCIAL,
- LENDMARK FINANCIAL and
- RESURGENT/CREDIT ONE/LVNV.

Equifax had actual notice through its own system of every account at issue in this litigation. Despite this actual notice embedded in its own database, Equifax continued reporting three

public records, continued displaying the false portal definition to lenders, and continued applying false Bankruptcy Chapter 7 codes to three tradelines. Continuing to report inaccurate information after actual notice of its removal, documented in one's own internal database at a specific Bates number, is willful noncompliance under 15 U.S.C. §1681n. See *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

## IDENTITY VERIFICATION — SELECTIVE COMPLIANCE

Since August 4, 2025, Plaintiff has submitted complete identity verification packages to Equifax on the following dates:

- August 4, 2025 (Universal ID package including notarized FTC affidavit, statement of truth, government ID, Social Security number, utility bill, and lease);

- August 12, 2025; December 2025 (twice);

- January 3, 2026;

- April 24, 2026.

- Every submission included Social Security number, government-issued ID, utility bill, and lease. Equifax's call records confirm Plaintiff's PII was verified successfully on every phone call. Equifax sent Plaintiff dispute results, credit file letters, and portal alerts addressed correctly to Plaintiff — confirming Equifax knows exactly who Plaintiff is. Equifax's 2023 credit report lists Plaintiff's name in a non-standard hyphenated format at the top, while simultaneously listing Plaintiff's full correct legal name in the 'Also Known As' section below — proving Equifax has had Plaintiff's correct name in its own file since at least 2023. Yet on every written request invoking Plaintiff's statutory rights — complete file disclosure under §1681g

and method of verification under §1681i(a)(7) — Equifax responded that it could not verify Plaintiff's identity despite having received six complete verification packages. Equifax verified Plaintiff's identity when doing so served Equifax's purposes. Equifax claimed inability to verify only when verification would have required Equifax to answer a statutory demand. This pattern across six documented dates is selective compliance with statutory obligations and is itself evidence of willfulness under §1681n.

## DAMAGES — SCORE DISPARITY AND ADVERSE ACTIONS

On December 2, 2025, Patelco Credit Union pulled Plaintiff's Equifax report. Plaintiff's score was 619. On December 22, 2025, Patelco denied Plaintiff's mortgage application (Loan No. 8162160491) citing as principal reasons: delinquent past or present credit obligations, bankruptcy, and insufficient cash. Every adverse factor maps precisely to an inaccuracy documented in Equifax's own produced records. Plaintiff's Equifax score has since declined to 545 — a 74-point further drop during active litigation. As of May 25, 2026, Plaintiff's scores are: Equifax 528 (Poor); Experian 678 (Good); TransUnion 631 (Fair) (Exhibit N). The 150-point disparity between Plaintiff's Equifax and Experian scores on the same date — with the same underlying account history — is direct evidence that Equifax's false bankruptcy-associated coding is the cause of the suppression. Experian deleted the contested tradelines in September 2025 and has not reinserted them. Equifax reinserted the AES tradeline without notice and continues reporting three dismissed

bankruptcy public records through a source that removed all four in December 2025.

Plaintiff filed four Chapter 7 bankruptcy petitions between February and June 2025. All four were dismissed within weeks before reaching any substantive stage. No creditor list, schedules, or account information was ever submitted.

No accounts were ever attached to any petition.

On July 10, 2025, the Bankruptcy Court issued a written order expressly finding that all four cases never proceeded to any substantive stage before dismissal. Despite this, Equifax added false Chapter 7 bankruptcy notations to active tradelines after July 2025 and continued reporting three dismissed bankruptcy public records through the present. As of May 25, 2026 — during active litigation with counsel appearing — all three entries remain live on Plaintiff's myEquifax portal with blank Status fields showing no disposition. Plaintiff's VantageScore is currently 545, rated Poor.

## III. THREE COMPLETE SETS OF DISCOVERY — ZERO SUBSTANTIVE ANSWERS

### SET 1 — Served and responded April 28, 2026:

Plaintiff propounded 14 Interrogatories, 15 Requests for Production, and 13 Requests for Admission. Every interrogatory was objected to as overbroad and referred to an undifferentiated production of 2,514 pages (EIS-THOMPSON-000001-002514) without identifying which pages answer which question — in violation of FRCP Rule 33(d). Every request for production was objected to and referred to the same document dump without confirmation of diligent search as

required by Judge Westmore's Standing Order paragraph 15. Only two admissions were provided across 13 Requests for Admission: that Equifax maintained a consumer file, and that bankruptcy public records appeared in Plaintiff's file. Every other RFA was met with implausible claims of insufficient information about Equifax's own internal data.

**SET 2 — Served May 19, 2026:**

Plaintiff propounded additional discovery targeting deficiencies in Set 1. Equifax responded with deficient answers. Plaintiff sent a detailed meet and confer letter on May 25, 2026. Equifax has not responded as of the date of this filing.

**SET 3 — Served May 5, 2026, Equifax responded May 27, 2026:**

Plaintiff propounded Supplemental Requests for Admission Nos. 18-30. Every single RFA was met with the identical formula: object as vague, claim insufficient information. RFA Nos. 18, 19, 20, 21, 22, and 26 concern information on the face of Equifax's own produced credit files. The claim of insufficient information is not credible.

## IV. DEFENSE COUNSEL'S WRITTEN ADMISSION OF A FEDERAL STATUTORY VIOLATION

On May 5, 2026, in response to Plaintiff's demand for reinsertion documentation required under 15 U.S.C. §1681i(a)(5)(B), defense counsel Ritika Singh stated in writing:

*"There are no responsive documents."*

This statement is part of the permanent record of this case. Under 15 U.S.C. §1681i(a)(5)(B), Equifax cannot reinsert previously deleted information without written certification of accuracy from the furnisher and written notice to the consumer within five business days. Defense counsel has confirmed in writing that no such certification exists and no such notice was ever sent. This is not a discovery gap. This is a per se statutory violation admitted by opposing counsel on the record.

## V. THE EMAIL CHAIN — DOCUMENTED TIMELINE OF NON-COMPLIANCE

**May 4, 2026:** Plaintiff raised 5 specific deficiencies in Set 1 production by email to defense counsel.

**May 5, 2026:** Defense counsel replied: 'The documents produced (EIS-THOMPSON-000001-002514) on April 28, 2026 are all the documents in your Equifax file. I recommend that you revisit those documents as there were over 2,000 pages produced.'

**May 5, 2026:** Plaintiff demanded Bates identification by category per FRCP Rule 34(b)(2)(E)(i). Defense counsel provided partial Bates ranges for one category only and stated 'There are no responsive documents' for reinsertion documentation.

**May 9, 2026:** Plaintiff replied with detailed legal analysis and warned of motion to compel. No response received from Equifax.

**May 14, 2026:** Plaintiff sent Rule 26(f) meet and confer request for CMC preparation. No response from Equifax.

**May 25, 2026:** Plaintiff sent detailed Set 2 meet and confer letter. No response from Equifax.

**May 27, 2026:** Equifax responded to Set 3 with identical boilerplate across all 13 RFAs.

**May 27, 2026 at 12:08 PM:** Plaintiff sent final consolidated meet and confer letter covering Sets 1, 2, and 3, demanding complete amended responses by June 5, 2026, and warning of consolidated Motion to Compel with sanctions under FRCP Rule 37(a)(5).

**May 27, 2026 at 5:57 AM: Senior Counsel Jennifer R. Brooks of Seyfarth Shaw LLP —** who had never previously communicated directly with Plaintiff in this litigation — sent the following email directly to Plaintiff, copying Ritika Singh and Tom Quinn:

**"It appears you agree that you filed the bankruptcy petitions, and that they were then dismissed. Therefore, the reporting is accurate. Please identify any other information you claim to be inaccurate."**

This was the first and only direct communication Plaintiff has received from Senior Counsel Brooks in this litigation at any point, before or after, up to today.

No greeting, no proposal, no engagement with the substance of Plaintiff's meet and confer letter. **This response does not address: Code 280 (Bankruptcy Discharged)** appearing in Equifax's own ACDV system at EIS-THOMPSON-001747 and EIS-THOMPSON-001918 on an account where no discharge ever occurred; the portal definition displayed to lenders stating bankruptcy is a court-granted finding of inability to pay debts; EIS-THOMPSON-002401 in which Equifax's own database records that the data was removed from LexisNexis and the consumer did not receive benefits of bankruptcy filing; the reinsertion of the AES student loan tradeline in January 2026 for which defense counsel has confirmed no documentation exists; or the verification purportedly conducted on December 29, 2025 through a PO Box confirmed closed by USPS. Equifax's position, as stated by senior counsel in writing at 5:57 AM on May 27, 2026, is that

appeared after Plaintiff's original complaint was filed, Plaintiff was unable to include them at that time. The motion seeks leave to add these two accounts to the existing claims based on the same pattern of false bankruptcy-associated reporting that forms the core of this case.

Equifax's opposition deadline was May 26, 2026. Equifax filed no opposition. Under *Judge Westmore's Standing Order ¶22 (December 19, 2025),* Equifax's failure to file a memorandum of points and authorities in opposition constitutes consent to the granting of the motion. Plaintiff respectfully requests that the Court grant this motion.

## VIII. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

**1.** Order Equifax to provide complete substantive amended responses to all deficient items in Sets 1, 2, and 3 by June 5, 2026 or a date set by the Court, including narrative answers to all interrogatories with specific Bates identification by interrogatory number per Rule 33(d), confirmation of diligent search for all RFPs, and proper admissions or denials for all RFAs;

**2.** Adopt Plaintiff's Phase One discovery plan — four accounts, two-year primary window plus two targeted historical carve-outs, three categories of documents, 30 days;

**3.** Order Equifax to propose a protective order immediately so that withheld policies and procedures can be produced without further delay;

**4.** Grant Plaintiff's Administrative Motion (Dkt. 26) to include Capital One and OneMain Financial accounts in Plaintiff's pleading, given Equifax's failure to oppose by the May 26, 2026 deadline.

reporting a dismissed petition is categorically accurate under the FCRA. Plaintiff respectfully submits that this position does not survive *Dalton v. Capital Associated Industries*, 257 F.3d 409 (4th Cir. 2001), *Chaitoff v. Experian Information Solutions*, 79 F.4th 800 (7th Cir. 2023), or the plain language of 15 U.S.C. §1681e(b), and does not address Code 280 — which is not a dismissed petition code but a Bankruptcy Discharged code — a legal status that no federal court has ever granted regarding Plaintiff's debts.

## VI. PLAINTIFF'S PROPOSED PHASE ONE   NARROW DISCOVERY PLAN

Plaintiff proposes the following **Phase One discovery plan** as the narrowest possible scope consistent with Plaintiff's claims:

**Four specific accounts:**

**1. The four dismissed bankruptcy petitions** (Cases 25-40375, 25-40511, 25-40725, 25-40998)

**2. AES/ELFI student loan tradeline** — deleted September 2025, reinserted January 2026

**3. OneMain Financial tradeline** — false Chapter 7 notation after July 2025

**4. Lendmark Financial/Jefferson Capital tradeline** — false Chapter 7 notation and dual tradeline

**Primary time period: January 2024 through January 2026 — two years.**

Every item described in Section II above falls within this two-year window.

**One targeted historical carve-out tradeline, outside the two-year window:**

Carve-out — 2020 Student Loan Trade Line Deletion: The AES/ELFI student loan appeared on Plaintiff's trade report in 2020 and was subsequently deleted, then later reappeared showing a different origination year. Plaintiff requests only records explaining what caused the original 2020 deletion and what happened to that trade entry. This is directly relevant to understanding the September 2025 deletion and January 2026 reinsertion that contributed to the mortgage denial.

**Three categories of documents only:**

**1. All reinvestigation records for the four specified accounts**

**2. Complete ownership and transfer history with all communications**

**3. Complete account update history**

**Completion: 30 days from Court order.**

Equifax has proposed a fact discovery cutoff of January 2027 — nine months from now. Plaintiff respectfully submits that nine months is not required to produce three categories of digital records concerning four specified accounts. Thirty days is more than sufficient.

## VII. OUTSTANDING MOTION — DOCKET 26

Plaintiff's Administrative Motion for Leave to File Limited Supplemental Amendment (Dkt. 26, filed May 22, 2026) seeks to include two additional accounts in Plaintiff's pleading: Capital One and OneMain Financial. Both accounts were not included in Plaintiff's original pleading. Both accounts received false 'Included in Bankruptcy' notations after July 2025 — within the last six months — following the dismissal of all four bankruptcy petitions. Because these false notations

Plaintiff intends to file a consolidated Motion to Compel covering Sets 1, 2, and 3 if complete amended responses are not received by June 5, 2026, and will seek attorneys' fees and sanctions under FRCP Rule 37(a)(5). Given defense counsel's written admission that no reinsertion records exist, Plaintiff will also seek a finding of per se willful violation under 15 U.S.C. §1681n.

Respectfully submitted,

Dated: May 28, 2026

Predrag Dimitri Dimitrov Thompson

Plaintiff, Pro Se

491 Staten Avenue, Apt. 14

Oakland, CA 94610

dimitrifromlondon@hotmail.com

(510) 325-2952

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2026, I served the foregoing Notice upon defense counsel via the Court's ECF system, which provides electronic notice to all counsel of record including Ritika Singh (risingh@seyfarth.com), Jennifer R. Brooks (jrbrooks@seyfarth.com), and Tom Quinn (tquinn@nokesquinn.com).

Predrag Dimitri Dimitrov Thompson

Plaintiff, Pro Se