UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

PREDRAG DIMITRI DIMITROV THOMPSON,
**Plaintiff,**

vs.

EQUIFAX INFORMATION SERVICES LLC,
**Defendant.**

## Case No. 4:26-cv-00834-KAW

# FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
### PURSUANT TO THE FAIR CREDIT REPORTING ACT
15 U.S.C. §§ 1681 et seq. AND
CALIFORNIA CONSUMER CREDIT REPORTING
AGENCIES ACT, CAL. CIV. CODE § 1785.1 et seq.

### JURY TRIAL DEMANDED

### I. PARTIES

1. Plaintiff Predrag Dimitri Dimitrov Thompson ("Plaintiff") is a natural person and consumer residing at 491 Staten Avenue, Apt. 14, Oakland, CA 94610.

2. Defendant Equifax Information Services LLC ("Equifax") is a Georgia limited liability company engaged in the business of assembling, evaluating, and furnishing consumer credit information, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to **15 U.S.C. §§ 1681n and 1681o,** and **California Civil Code § 1785.1 et seq.**

4. This Court has supplemental jurisdiction over Plaintiff's California CCRAA claims pursuant to **28 U.S.C. § 1367.**

5. Venue is proper because Plaintiff resides in California and the unlawful acts caused harm within this District.

## III. FACTUAL ALLEGATIONS

### A. Receipt of Statutory Identity Theft Documentation

6. On or about August 15, 2025, Plaintiff sent Equifax a complete identity verification and identity theft packet, including a notarized Universal ID affidavit, government-issued identification, proof of residence, full Social Security number, IRS-accepted tax returns, a Federal Trade Commission Identity Theft Report pursuant to 15 U.S.C. § 1681c-2, and documentation related to the Experian data breach.

7. Equifax received and signed for these materials.

### B. Failure to Block Identity Theft Information

8. Despite receipt of a valid FTC Identity Theft Report and compliant identification, **Equifax failed to block disputed information as required by 15 U.S.C. § 1681c-2(a).**

9. Equifax continued reporting disputed tradelines while asserting that Plaintiff's identification was insufficient.

### C. Illegal Reinsertion After Explicit Notice

10. **On January 5, 2026, Plaintiff submitted a second written demand requesting a complete credit file under 15 U.S.C. § 1681g** and explicitly instructing Equifax not to reinsert the AES/ELFI tradeline. The package included a copy of Driving Licence, Social Security Card, Lease and Utility Bill.

11. Equifax received and acknowledged this demand.

12. **On January 10, 2026, Equifax reinserted the AES/ELFI tradeline without providing the reinsertion notice required by 15 U.S.C. § 1681i(a)(5)(B).**

13. Equifax also failed to provide Plaintiff's credit file. On March 21st 2026, Plaintiff submitted a request letter for **Methods of Verification** for all accounts on Plaintiff's file. The package included a copy of Driving Licence, Social Security Card, Lease and Utility Bill. Equifax received and signed for these materials.

### D. Selective Bankruptcy Verification

14. **Plaintiff provided Equifax with court-embossed dismissal orders for four bankruptcy petitions, including via a CFPB complaint filed December 12, 2025.**

15. **Equifax deleted only one petition** while verifying three others as accurate, relying on LexisNexis rather than court records.

16. **On December 9, 2025, LexisNexis Risk Solutions formally notified Equifax through its CFPB response (Consumer Number 17504489, CFPB Case No. 251124-26175205) that it had located and removed all four bankruptcy case numbers — 2540725, 2540511, 2540375, and 2540998 — from Plaintiff's LexisNexis file**, and that the consumer did not receive benefits of the bankruptcy filing, **as recorded by LexisNexis employee Bonica Massey at Bates No. EIS-002401 in Equifax's own production documents.**

17. Despite this actual written notice, Equifax purported to verify three deleted bankruptcy entries as reporting correctly on December 29, 2025, through a LexisNexis Consumer Center PO Box confirmed closed by USPS Investigation between November 16 and approx December 25, 2025.

18. On January 9, 2026, LexisNexis filed a second dispute with Equifax on Plaintiff's behalf (Case No. 36550659). Equifax failed to respond within the statutory 30-day window. On February 10, 2026, **LexisNexis confirmed to Plaintiff that Equifax had not responded**.

19. As of the date of this filing, all three bankruptcy public record entries — Cases 2540511, 2540725, and 2540375 — remain on Plaintiff's Equifax credit file, confirmed by Equifax credit file dated May 30, 2026 (Confirmation No. 6150500583) and portal screenshot taken June 2, 2026. **The credit file expressly states this data was obtained through LexisNexis — the same vendor that deleted all four records on December 9, 2025.**

**E. False Ownership Reporting — Lendmark / Jefferson**

20. On December 15, 2025, **Lendmark Financial Services admitted in writing that the account ending in \*2803 was sold to Jefferson Capital and Lendmark no longer owned or collected the debt.**

21. Equifax nevertheless continued reporting inconsistent ownership information and **applied false bankruptcy inclusion coding to this account without disclosure of assignment documentation.**

**F. False Bankruptcy Coding and Derogatory Reporting — Capital One Account \*6729**

22. Equifax has reported false and inaccurate information on Plaintiff's Capital One Bank USA NA account ending in \*6729 (opened November 12, 2016, closed April 15, 2025 by credit grantor).

23. The account was charged off. However, **Equifax reported a jump from 30 days past due in March 2025 directly to Charge Off in April 2025 — skipping the required delinquency progression under Metro 2 standards** — constituting a separate inaccuracy in the payment history.

24. **Equifax applied false bankruptcy coding to this account including Code 220 (Bankruptcy Chapter 7), Code 279 (Bankruptcy Petition), and Code 280** (Bankruptcy Discharged) during May, June, and September 2025. **No discharge was ever entered on any of Plaintiff's four petitions. No account was ever attached to or listed in any petition.**

25. **Equifax reported a Date Major Delinquency 1st Reported of April 13, 2026** on this account **despite the account having been closed by the credit grantor on April 15, 2025 — one full year earlier.** A major delinquency date reported after the account closure date is a temporal impossibility and a separate inaccuracy under **15 U.S.C. § 1681e(b).**

26. **Following the account closure on April 15, 2025, Equifax continued reporting this closed account with charge-off status for at least 6 consecutive post-closure months** — September 2025, October 2025, November 2025, December 2025, January 2026, and February 2026 — as confirmed by Plaintiff's Equifax credit file dated May 30, 2026

(Confirmation No. 6150500583), each constituting a separate violation of **15 U.S.C. § 1681e(b)**.

27. Equifax's own credit file disclosure defines the distinction between dismissal and discharge: "A dismissal means that your bankruptcy was stopped before the court entered a discharge order. A discharge is an order of the court that legally relieves you of the requirement to repay certain debts incurred before your bankruptcy." (Equifax Credit File Confirmation No. 6150500583, May 30, 2026, page 18 of 26.) **Despite this acknowledgment, Equifax applied Code 280 — Bankruptcy Discharged — to this account when no discharge was ever entered.**

### G. False and Ongoing Derogatory Reporting — OneMain Financial Account *5661

28. Equifax has reported false and inaccurate information on Plaintiff's OneMain Financial account ending in *5661 (opened July 26, 2021, date of first delinquency January 31, 2023, charge-off amount $7,005).

29. Despite this account having been charged off on August 30, 2023, as confirmed by OneMain Financial's own written response to Plaintiff's CFPB complaint dated September 19, 2025, Equifax reported a frozen balance of $7,005 with charge-off status every month for approximately 27 consecutive months — from November 2023 through March 2026 — as confirmed by Plaintiff's Equifax credit file dated May 30, 2026 (Confirmation No. 6150500583). Each monthly reporting cycle of a frozen balance on a closed charged-off account constitutes a separate violation of **15 U.S.C. § 1681e(b)**.

30. **Equifax applied false bankruptcy coding to this account including Code 220** (Bankruptcy Chapter 7) and Code 279 (Bankruptcy Petition) during March and April 2025 — months in which the petitions had already been dismissed and no accounts were attached to any petition.

31. The account has no closing date recorded in Equifax's file. Contrary to Equifax's reporting of OneMain as individual account owner, the account is in fact held by Wilmington Trust, N.A. as Issuer Loan Trustee for OneMain Financial Issuance Trust 2019-A, with OneMain acting only as servicer — as revealed by two collection lawsuits filed against Plaintiff in Alameda County Superior Court: Case No. 24CV074974 (filed May 10, 2024) and Case No. 26CV162538 (filed January 2, 2026), both demanding $7,005.95. Equifax's reporting reflects no trust ownership, no securitization, and no litigation notation despite the account having been in active litigation since May 2024. Despite this, OneMain submitted a fresh data update to Equifax as recently as April 6, 2026, certifying the accuracy of the frozen $7,005 balance and charge-off status — information that Equifax accepted and propagated despite its demonstrable inaccuracy.

### H. Actual Damages

32. On December 22, 2025, Plaintiff was denied a mortgage by Patelco Credit Union in the amount of approximately $420,000, Reference No. 725336004047916, Loan No. 6168169491, with "Bankruptcy" checked as a principal denial reason and four adverse factors each traceable to specific Equifax inaccuracies: (1) Serious delinquency and derogatory public record; (2) Number of accounts with delinquency; (3) Time since delinquency too recent; (4) Length of time accounts have been established.

33. On January 10, 2026, Navy Federal Credit Union pulled Plaintiff's credit report on the same date as the unlawful AES/ELFI reinsertion, constituting a second lender impact from Equifax's false reporting.

34. Plaintiff's Equifax credit score as of May 25, 2026 is 528 — Poor. Plaintiff's TransUnion score is 631 — Fair. Plaintiff's Experian score is 678 — Good. The 150-point disparity is direct evidence that Equifax's false reporting is solely responsible for Plaintiff's score suppression.

35. Plaintiff suffered financial loss, credit suppression, emotional distress, and loss of credit opportunity as a direct and proximate result of Equifax's violations.

### IV. SYSTEMIC FAILURE ALLEGATIONS

36. Equifax's violations were not isolated errors but resulted from systemic procedural failures, including automated reinsertion pipelines, identity-theft block suppression mechanisms, third-party vendor reliance without verification, failure to reconcile conflicting data sources, and absence of human review after regulatory notice.

37. Liability cannot be adjudicated without discovery into Equifax's system architecture, reinsertion and override logs, identity-theft block logic, vendor ingestion hierarchy, e-OSCAR processing logs, and Rule 30(b)(6) testimony.

### V. CAUSES OF ACTION

**COUNT I — Failure to Maintain Reasonable Procedures (15 U.S.C. § 1681e(b))**

38. Plaintiff incorporates all preceding paragraphs by reference.

39. Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer credit report, including by: reporting false bankruptcy discharge coding on accounts never attached to any petition; continuing to report three bankruptcy public record entries after actual written notice of deletion from LexisNexis on December 9, 2025; verifying deleted entries through a confirmed-closed PO Box; reporting 27 consecutive months of charge-off notations on OneMain account *5661; reporting at least 6 post-closure charge-off notations on Capital One account *6729; reporting an impossible major delinquency date on Capital One *6729 after account closure; and applying retroactive false bankruptcy coding to historical payment months on multiple accounts.

40. Each monthly reporting cycle constituting an inaccuracy is a separate violation, resulting in approximately 74 or more discrete violations across all accounts identified herein.

41. Equifax's violations were willful within the meaning of **15 U.S.C. § 1681n** and *Safeco Insurance Co. v. Burr, 551 U.S. 47 (2007)*.

**COUNT II — Failure to Conduct Reasonable Reinvestigation (15 U.S.C. § 1681i(a))**

42. Plaintiff incorporates all preceding paragraphs by reference.

43. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's disputes by issuing four identical boilerplate rejections claiming inability to identify Plaintiff while simultaneously identifying Plaintiff correctly for other purposes; rubber-stamp verifying

deleted bankruptcy records through a confirmed-closed PO Box; failing to respond to the LexisNexis dispute filed January 9, 2026 within the statutory 30-day window; failing to act on court-embossed dismissal orders received December 12, 2025; and on August 19, 2025 — four days after receiving Plaintiff's complete identity theft documentation packet including a valid FTC Identity Theft Report — designating disputes regarding Capital One *5773, OneMain *5661, and Lendmark *2803 **as frivolous** pursuant to **15 U.S.C. § 1681i(a)(3)** solely on the basis that a prior dispute was pending, rather than any lack of sufficient information, as documented in Equifax's own production at Bates No. EIS-THOMPSON-001880.

### COUNT III — Illegal Reinsertion Without Notice (15 U.S.C. § 1681i(a)(5)(B))

44. Plaintiff incorporates all preceding paragraphs by reference.

45. On January 10, 2026, **Equifax reinserted the AES/ELFI tradeline without providing the reinsertion notice required by 15 U.S.C. § 1681i(a)(5)(B)** and without obtaining written certification of accuracy from the furnisher, after having received Plaintiff's explicit written instruction not to reinsert on January 5, 2026. **Equifax's own counsel confirmed in writing on May 5, 2026 that no responsive documents exist for this reinsertion.**

### COUNT IV — Failure to Block Identity Theft Information (15 U.S.C. § 1681c-2)

46. Plaintiff incorporates all preceding paragraphs by reference.

47. Despite receipt of a valid FTC Identity Theft Report and compliant identification on August 15, 2025, Equifax failed to block disputed information as required by **15 U.S.C. § 1681c-2(a)** and continued reporting disputed tradelines.

### COUNT V — Willful Noncompliance (15 U.S.C. § 1681n)

48. Plaintiff incorporates all preceding paragraphs by reference.

49. Equifax acted willfully within the meaning of *Safeco Insurance Co. v. Burr, 551 U.S. 47 (2007),* by knowingly or recklessly disregarding its FCRA obligations. Plaintiff is entitled to statutory damages of not less than $100 and not more than $1,000 for each willful violation — approximately 74 or more violations — plus punitive damages, costs and such further relief as the Court deems proper and in an amount to be determined by the jury.

### COUNT VI — Negligent Noncompliance (15 U.S.C. § 1681o)

50. Plaintiff incorporates all preceding paragraphs by reference.

51. In the alternative, if any violation is found not to have been willful, such violation was negligent within the meaning of **15 U.S.C. § 1681o**, and Plaintiff is entitled to actual damages and costs.

### COUNT VII — California CCRAA Violations (Cal. Civ. Code § 1785.25(a))

52. Plaintiff incorporates all preceding paragraphs by reference.

53. Equifax furnished, maintained, and reported information it knew or should have known was incomplete or inaccurate, in violation of **California Civil Code § 1785.25(a)**. Plaintiff is entitled to the remedies provided by **California Civil Code § 1785.31**, including actual

damages, punitive damages of not less than $100 and not more than $5,000 per violation, and attorney fees.

## VI. PRAYER FOR RELIEF

Plaintiff seeks the following relief:

- Statutory damages under **15 U.S.C. § 1681n** of $1,000 per willful violation for approximately 74 or more documented violations;
- Actual damages including mortgage denial, loss of credit opportunity, emotional distress, credit suppression, out-of-pocket losses, and economic damages to be proven at trial.
- Punitive damages under **15 U.S.C. § 1681n** in an amount sufficient to deter Equifax from similar conduct;
- Damages under **California Civil Code § 1785.31** including actual damages, punitive damages, and attorney fees;
- Injunctive relief ordering Equifax to immediately delete all three remaining bankruptcy public record entries — Cases 2540511, 2540725, and 2540375;
- Injunctive relief ordering Equifax to correct all false bankruptcy coding on all accounts identified herein;
- Injunctive relief ordering Equifax to provide Plaintiff's complete credit file as required by **15 U.S.C. § 1681g;**
- Costs of this action; and
- Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Respectfully submitted,

**Predrag Dimitri Dimitrov Thompson**
Plaintiff Pro Se
491 Staten Avenue, Apt. 14, Oakland, California 94610
(510) 325-2952 | dimitrifromlondon@hotmail.com

Dated: June 04, 2026