SEYFARTH SHAW LLP
Ritika Singh (SBN 329197)
risingh@seyfarth.com
2323 Ross Avenue, Suite 1660
Dallas, Texas 75201
Telephone: (469) 608-6763

*Counsel for Defendant*
*Equifax Information Services LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PREDRAG DIMITRI DIMITROV THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br><br>Defendant. | Case No. 4:26-CV-00834-KAW<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND AFFIRMATIVE AND OTHER DEFENSES** |

Defendant EQUIFAX INFORMATION SERVICES LLC ("Equifax") by and through its attorneys hereby submits its Answer to Plaintiff's First Amended Complaint for Damages and Injunctive Relief and Affirmative and Other Defenses, as follows:

## PRELIMINARY STATEMENT

In answering the First Amended Complaint, Equifax states that it is responding to allegations on behalf of itself only, even where the allegations pertain to alleged conduct by all Defendants. Equifax denies any and all allegations in the headings and/or unnumbered paragraphs in the First Amended Complaint.

## ANSWER

In response to the specific allegations in the enumerated paragraphs in the Complaint, Equifax responds as follows:

## I. PARTIES

**COMPLAINT ¶1:**

Plaintiff Predrag Dimitri Dimitrov Thompson ("Plaintiff") is a natural person and consumer residing at 491 Staten Avenue, Apt. 14, Oakland, CA 94610.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶2:**

Defendant Equifax Information Services LLC ("Equifax") is a Georgia limited liability company engaged in the business of assembling, evaluating, and furnishing consumer credit information, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309.

**ANSWER:**

Equifax admits that it is a Georgia limited liability company that maintains its principal address at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax also admits that, at times, it engages in the business of assembling, and disbursing consumer reports to third-parties. Equifax denies the remaining allegations in this paragraph.

## II. JURISDICTION AND VENUE

**COMPLAINT ¶3:**

This Court has jurisdiction pursuant to 15 U.S.C. §§ 1681n and 1681o, and California Civil Code § 1785.1 et seq.

**ANSWER:**

To the extent Plaintiff has properly alleged the claims herein, Equifax admits that this Court may exercise its subject matter jurisdiction.

**COMPLAINT ¶4:**

This Court has supplemental jurisdiction over Plaintiffs California CCRAA claims pursuant to 28 U.S.C. § 1367.

**ANSWER:**

To the extent Plaintiff has properly alleged the claims herein, Equifax admits that this Court may exercise its subject matter jurisdiction.

**COMPLAINT ¶5:**

Venue is proper because Plaintiff resides in California and the unlawful acts caused harm within this District.

**ANSWER:**

Equifax admits that the Plaintiff has alleged venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2). Equifax states that this is a legal conclusion which is not subject to denial or admission.

### III. FACTUAL ALLEGATIONS

**A. Receipt of Statutory Identity Theft Documentation**

**COMPLAINT ¶6:**

On or about August 15, 2025, Plaintiff sent Equifax a complete identity verification and identity theft packet, including a notarized Universal ID affidavit, government-issued identification, proof of residence, full Social Security number, IRS-accepted tax returns, a Federal Trade Commission Identity Theft Report pursuant to 15 U.S.C. § 1681c-2, and documentation related to the Experian data breach.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶7:**

Equifax received and signed for these materials.

**ANSWER:**

Equifax denies the allegations in this paragraph.

3

**B. Failure to Block Identity Theft Information**

**COMPLAINT ¶8:**

Despite receipt of a valid FTC Identity Theft Report and compliant identification, Equifax failed to block disputed information as required by 15 U.S.C. § 1681c-2(a).

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶9:**

Equifax continued reporting disputed tradelines while asserting that Plaintiff's identification was insufficient.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**C. Illegal Reinsertion After Explicit Notice**

**COMPLAINT ¶10:**

On January 5, 2026, Plaintiff submitted a second written demand requesting a complete credit file under 15 U.S.C. § 1681g and explicitly instructing Equifax not to reinsert the AES/ELFI tradeline. The package included a copy of Driving Licence, Social Security Card, Lease and Utility Bill.

**ANSWER:**

Equifax admits that on January 5, 2026, it received a letter from Plaintiff concerning information in his credit file, the contents of which speak for themselves.

**COMPLAINT ¶11:**

Equifax received and acknowledged this demand.

**ANSWER:**

Equifax admits that on January 5, 2026, it received a letter from Plaintiff concerning information in his credit file.

326431435v.1

**COMPLAINT ¶12:**

On January 10, 2026, Equifax reinserted the AES/ELFI tradeline without providing the reinsertion notice required by 15 U.S.C. § 1681i(a)(5)(B).

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶13:**

Equifax also failed to provide Plaintiff's credit file. On March 21st 2026, Plaintiff submitted a request letter for Methods of Verification for all accounts on Plaintiff's file. The package included a copy of Driving Licence, Social Security Card, Lease and Utility Bill. Equifax received and signed for these materials.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**D. Selective Bankruptcy Verification**

**COMPLAINT ¶14:**

Plaintiff provided Equifax with court-embossed dismissal orders for four bankruptcy petitions, including via a CFPB complaint filed December 12, 2025.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶15:**

Equifax deleted only one petition while verifying three others as accurate, relying on LexisNexis rather than court records.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶16:**

On December 9, 2025, LexisNexis Risk Solutions formally notified Equifax through its CFPB response (Consumer Number 17504489, CFPB Case No. 251124-26175205) that

it had located and removed all four bankruptcy case numbers - 2540725, 2540511, 2540375, and 2540998 - from Plaintiff's LexisNexis file, and that the consumer did not receive benefits of the bankruptcy filing, as recorded by LexisNexis employee Bonica Massey at Bates No. EIS-002401 in Equifax's own production documents.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶17:**

Despite this actual written notice, Equifax purported to verify three deleted bankruptcy entries as reporting correctly on December 29, 2025, through a LexisNexis Consumer Center PO Box confirmed closed by USPS Investigation between November 16 and approx December 25, 2025.

**ANSWER:**

Equifax admits that on December 29, 2025, it sent Plaintiff reinvestigation results, the contents of which speak for themselves. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶18:**

On January 9, 2026, LexisNexis filed a second dispute with Equifax on Plaintiff's behalf (Case No. 36550659). Equifax failed to respond within the statutory 30-day window. On February 10, 2026, LexisNexis confirmed to Plaintiff that Equifax had not responded.

**ANSWER:**

Equifax admits that on or about January 14, 2026, it received a reseller dispute from LexisNexis on Plaintiff's behalf. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶19:**

As of the date of this filing, all three bankruptcy public record entries — Cases 2540511, 2540725, and 2540375 — remain on Plaintiffs Equifax credit file, confirmed by Equifax credit file dated May 30, 2026 (Confirmation No. 6150500583) and portal

screenshot taken June 2, 2026. The credit file expressly states this data was obtained through LexisNexis — the same vendor that deleted all four records on December 9, 2025.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**E. False Ownership Reporting — Lendmark / Jefferson**

**COMPLAINT ¶20:**

On December 15, 2025, Lendmark Financial Services admitted in writing that the account ending in *2803 was sold to Jefferson Capital and Lendmark no longer owned or collected the debt.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶21:**

Equifax nevertheless continued reporting inconsistent ownership information and applied false bankruptcy inclusion coding to this account without disclosure of assignment documentation.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**F. False Bankruptcy Coding and Derogatory Reporting — Capital One Account *6729**

**COMPLAINT ¶22:**

Equifax has reported false and inaccurate information on Plaintiffs Capital One Bank USA NA account ending in *6729 (opened November 12, 2016, closed April 15, 2025 by credit grantor).

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶23:**

The account was charged off. However, Equifax reported a jump from 30 days past due in March 2025 directly to Charge Off in April 2025 - skipping the required delinquency progression under Metro 2 standards — constituting a separate inaccuracy in the payment history.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶24:**

Equifax applied false bankruptcy coding to this account including Code 220 (Bankruptcy Chapter 7), Code 279 (Bankruptcy Petition), and Code 280 (Bankruptcy Discharged) during May, June, and September 2025. No discharge was ever entered on any of Plaintiff's four petitions. No account was ever attached to or listed in any petition.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶25:**

Equifax reported a Date Major Delinquency 1st Reported of April 13, 2026 on this account despite the account having been closed by the credit grantor on April 15, 2025 — one full year earlier. A major delinquency date reported after the account closure date is a temporal impossibility and a separate inaccuracy under 15 U.S.C. § 1681e(b).

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND AFFIRMATIVE AND OTHER DEFENSES
326431435v.1

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶26:**

Following the account closure on April 15, 2025, Equifax continued reporting this dosed account with charge-off status for at least 6 consecutive post-closure months - September 2025, October 2025, November 2025, December 2025, January 2026, and February 2026 — as confirmed by Plaintiff's Equifax credit file dated May 30, 2026 (Confirmation No. 6150500583), each constituting a separate violation of 15 U.S.C. § 1681e(b).

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶27:**

Equifax's own credit file disclosure defines the distinction between dismissal and discharge: "A dismissal means that your bankruptcy was stopped before the court entered a discharge order. A discharge is an order of the court that legally relieves you of the requirement to repay certain debts incurred before your bankruptcy." (Equifax Credit File Confirmation No. 6150500583, May 30, 2026, page 18 of 26.) Despite this acknowledgment, Equifax applied Code 280 - Bankruptcy Discharged — to this account when no discharge was ever entered.

**ANSWER:**

Certain allegations in this paragraph refer to a document, which speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the document referenced by this paragraph. Equifax

denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**G. False and Ongoing Derogatory Reporting — OneMain Financial Account \*5661**

**COMPLAINT ¶28:**

Equifax has reported false and inaccurate information on Plaintiffs OneMain Financial account ending in \*5661 (opened July 26, 2021, date of first delinquency January 31, 2023, charge-off amount $7,005).

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶29:**

Despite this account having been charged off on August 30, 2023, as confirmed by OneMain Financial's own written response to Plaintiff's CFPB complaint dated September 19, 2025, Equifax reported a frozen balance of $7,005 with charge-off status every month for approximately 27 consecutive months - from November 2023 through March 2026 — as confirmed by Plaintiff's Equifax credit file dated May 30, 2026 (Confirmation No. 6150500583). Each monthly reporting cycle of a frozen balance on a closed charged-off account constitutes a separate violation of 15 U.S.C. § 1681e(b).

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶30:**

Equifax applied false bankruptcy coding to this account including Code 220 (Bankruptcy Chapter 7) and Code 279 (Bankruptcy Petition) during March and April 2025 — months in which the petitions had already been dismissed and no accounts were attached to any petition.

10

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶31:**

The account has no closing date recorded in Equifax's file. Contrary to Equifax's reporting of OneMain as individual account owner, the account is in fact held by Wilmington Trust, N.A. as Issuer Loan Trustee for OneMain Financial Issuance Trust 2019-A, with OneMain acting only as servicer — as revealed by two collection lawsuits filed against Plaintiff in Alameda County Superior Court: Case No. 24CV074974 (filed May 10, 2024) and Case No. 26CV162538 (filed January 2, 2026), both demanding $7,005.95. Equifax's reporting reflects no trust ownership, no securitization, and no litigation notation despite the account having been in active litigation since May 2024. Despite this, OneMain submitted a fresh data update to Equifax as recently as April 6, 2026, certifying the accuracy of the frozen $7,005 balance and charge-off status — information that Equifax accepted and propagated despite its demonstrable inaccuracy.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**H. Actual Damages**

**COMPLAINT ¶32:**

On December 22, 2025, Plaintiff was denied a mortgage by Patelco Credit Union in the amount of approximately $420,000, Reference No. 725336004047916, Loan No. 6168169491, with "Bankruptcy" checked as a principal denial reason and four adverse factors each traceable to specific Equifax inaccuracies: (1) Serious delinquency and

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND AFFIRMATIVE AND OTHER DEFENSES
326431435v.1

derogatory public record; (2) Number of accounts with delinquency; (3) Time since delinquency too recent; (4) Length of time accounts have been established.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶33:**

On January 10, 2026, Navy Federal Credit Union pulled Plaintiff's credit report on the same date as the unlawful AES/ELFI reinsertion, constituting a second lender impact from Equifax's false reporting.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶34:**

Plaintiffs Equifax credit score as of May 25, 2026 is 528 — Poor. Plaintiffs TransUnion score is 631 — Fair. Plaintiff's Experian score is 678 — Good. The 150-point disparity is direct evidence that Equifax's false reporting is solely responsible for Plaintiff's score suppression.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶35:**

Plaintiff suffered financial loss, credit suppression, emotional distress, and loss of credit opportunity as a direct and proximate result of Equifax's violations.

**ANSWER:**

Equifax denies the allegations in this paragraph.

## IV. SYSTEMIC FAILURE ALLEGATIONS

**COMPLAINT ¶36:**

Equifax's violations were not isolated errors but resulted from systemic procedural failures, including automated reinsertion pipelines, identity-theft block suppression

12

mechanisms, third-party vendor reliance without verification, failure to reconcile conflicting data sources, and absence of human review after regulatory notice.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶37:**

Liability cannot be adjudicated without discovery into Equifax's system architecture, reinsertion and override logs, identity-theft block logic, vendor ingestion hierarchy, e-OSCAR processing logs, and Rule 30(b)(6) testimony.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**V. CAUSES OF ACTION**

**COUNT I — Failure to Maintain Reasonable Procedures (15 U.S.C. § 1681e(b))**

**COMPLAINT ¶38:**

Plaintiff incorporates all preceding paragraphs by reference.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶39:**

Equifax failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer credit report, including by: reporting false bankruptcy discharge coding on accounts never attached to any petition; continuing to report three bankruptcy public record entries after actual written notice of deletion from LexisNexis on December 9, 2025; verifying deleted entries through a confirmed-closed PO Box; reporting 27 consecutive months of charge-off notations on OneMain account *5661; reporting at least 6 post-closure charge-off notations on Capital One account *6729; reporting an impossible major delinquency date on Capital One *6729 after account closure;

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND AFFIRMATIVE AND OTHER DEFENSES
326431435v.1

and applying retroactive false bankruptcy coding to historical payment months on multiple accounts.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶40:**

Each monthly reporting cycle constituting an inaccuracy is a separate violation, resulting in approximately 74 or more discrete violations across all accounts identified herein.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶41:**

Equifax's violations were willful within the meaning of 15 U.S.C. § 1681n and *Safeco Insurance Co. v. Burr*, 551 U.S. 47 (2007).

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COUNT II — Failure to Conduct Reasonable Reinvestigation (15 U.S.C. § 1681i(a))**

**COMPLAINT ¶42:**

Plaintiff incorporates all preceding paragraphs by reference.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶43:**

Equifax failed to conduct a reasonable reinvestigation of Plaintiff's disputes by issuing four identical boilerplate rejections claiming inability to identify Plaintiff while simultaneously identifying Plaintiff correctly for other purposes; rubber-stamp verifying deleted bankruptcy records through a confirmed-closed PO Box; failing to respond to the LexisNexis dispute filed January 9, 2026 within the statutory 30-day window; failing to act

14

DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND AFFIRMATIVE AND OTHER DEFENSES

326431435v.1

on court-embossed dismissal orders received December 12, 2025; and on August 19, 2025 — four days after receiving Plaintiff's complete identity theft documentation packet including a valid FTC Identity Theft Report — designating disputes regarding Capital One *5773, OneMain *5661, and Lendmark *2803 as frivolous pursuant to 15 U.S.C. § 1681i(a)(3) solely on the basis that a prior dispute was pending, rather than any lack of sufficient information, as documented in Equifax's own production at Bates No. EIS-THOMPSON-001880.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COUNT III - Illegal Reinsertion Without Notice (15 U.S.C. § 1681i(a)(5)(B))**

**COMPLAINT ¶44:**

Plaintiff incorporates all preceding paragraphs by reference.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶45:**

On January 10, 2026, Equifax reinserted the AES/ELFI tradeline without providing the reinsertion notice required by 15 U.S.C. § 1681i(a)(5)(B) and without obtaining written certification of accuracy from the furnisher, after having received Plaintiff's explicit written instruction not to reinsert on January 5, 2026. Equifax's own counsel confirmed in writing on May 5, 2026 that no responsive documents exist for this reinsertion.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COUNT IV — Failure to Block Identity Theft Information (15 U.S.C. § 1681c-2)**

**COMPLAINT ¶46:**

Plaintiff incorporates all preceding paragraphs by reference.

326431435v.1

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶47:**

Despite receipt of a valid FTC Identity Theft Report and compliant identification on August 15, 2025, Equifax failed to block disputed information as required by 15 U.S.C. §1681c-2(a) and continued reporting disputed tradelines.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COUNT V — Willful Noncompliance (15 U.S.C. § 1681n)**

**COMPLAINT ¶48:**

Plaintiff incorporates all preceding paragraphs by reference.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶49:**

Equifax acted willfully within the meaning of *Safeco Insurance Co. v. Burr*, 551 U.S. 47 (2007), by knowingly or recklessly disregarding its FCRA obligations. Plaintiff is entitled to statutory damages of not less than $100 and not more than $1,000 for each willful violation — approximately 74 or more violations — plus punitive damages, costs and such further relief as the Court deems proper and in an amount to be determined by the jury.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the FCRA or any other law, and denies that Plaintiff is entitled to any damages whatsoever.

**COUNT VI - Negligent Noncompliance (15 U.S.C. § 1681o)**

**COMPLAINT ¶50:**

Plaintiff incorporates all preceding paragraphs by reference.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶51:**

In the alternative, if any violation is found not to have been willful, such violation was negligent within the meaning of 15 U.S.C. § 1681o, and Plaintiff is entitled to actual damages and costs.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the FCRA or any other law, and denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

**COUNT VII — California CCRAA Violations (Cal. Civ. Code § 1785.25(a))**

**COMPLAINT ¶52:**

Plaintiff incorporates all preceding paragraphs by reference.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶53:**

Equifax furnished, maintained, and reported information it knew or should have known was incomplete or inaccurate, in violation of California Civil Code § 1785.25(a). Plaintiff is entitled to the remedies provided by California Civil Code § 1785.31, including actual damages, punitive damages of not less than $100 and not more than $5,000 per violation, and attorney fees.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the CCCRAA or any other law, and denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

## VI. PRAYER FOR RELIEF

Plaintiff seeks the following relief:

- Statutory damages under 15 U.S.C. § 1681n of $1,000 per willful violation for approximately 74 or more documented violations;
- Actual damages including mortgage denial, loss of credit opportunity, emotional distress, credit suppression, out-of-pocket losses, and economic damages to be proven at trial.
- Punitive damages under 15 U.S.C. § 1681n in an amount sufficient to deter Equifax from similar conduct;
- Damages under California Civil Code § 1785.31 including actual damages, punitive damages, and attorney fees;
- Injunctive relief ordering Equifax to immediately delete all three remaining bankruptcy public record entries — Cases 2540511, 2540725, and 2540375;
- Injunctive relief ordering Equifax to correct all false bankruptcy coding on all accounts identified herein;
- Injunctive relief ordering Equifax to provide Plaintiff's complete credit file as required by 15 U.S.C. § 1681g;
- Costs of this action; and
- Such other and further relief as this Court deems just and proper.

**ANSWER:**

Equifax denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

18

**JURY TRIAL DEMANDED**

**ANSWER:**

Equifax admits that Plaintiff demands a jury trial on all triable issues. Equifax objects to a jury trial on any claims for equitable relief and all other issues as to which a jury is not permitted as of right or as a matter of law.

**AFFIRMATIVE AND OTHER DEFENSES**

Equifax asserts the following affirmative and other defenses to the Complaint:

**FIRST DEFENSE**

Plaintiff's claim fails in whole or in part to state a claim against Equifax upon which relief can be granted.

**SECOND DEFENSE**

At all relevant times herein, the Plaintiff's alleged damages, which Equifax denies exist, were aggravated by the failure of Plaintiff to use reasonable diligence to mitigate the same. Therefore, Plaintiff's recovery, if any, should be barred or decreased by reason of their failure to mitigate alleged losses.

**WHEREFORE**, having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, Equifax prays that:

(1)    Plaintiff's Complaint be dismissed in its entirety and with prejudice as to Equifax, with all costs taxed against Plaintiff;

(2)    it be dismissed as a party to this action;

(3)    it recover such other and additional relief as the Court deems just and appropriate.

DATED: June 18, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: _/s/ Ritika Singh_

Ritika Singh
_Counsel for Defendant_
_Equifax Information Services LLC_

20

326431435v.1

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2026, I presented the foregoing DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND AFFIRMATIVE AND OTHER DEFENSES with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record and *Pro Se* Plaintiff.

/s/ Ritika Singh
Ritika Singh
*Counsel for Defendant*
*Equifax Information Services LLC*

326431435v.1